IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Case No. 3:25-CR-50 |
| Plaintiff | : | JUDGE WALTER H. RICE |
| v. | : | |
| JOSE ANTONIO ALVARENGA, | : | |
| Defendant | : | |

**UNITED STATES' RESPONSE TO DEFENDANT'S MOTION TO DISMISS**

Now comes the United States, by and through Assistant United States Attorney, Erica Lunderman, and respectfully submits the following response in opposition to Defendant's Motion. The United States requests this Court deny Defendant's motion to dismiss.

Respectfully submitted,

DOMINICK S. GERACE II
UNITED STATES ATTORNEY

*/s/ Erica D. Lunderman*
Erica D. Lunderman (0098342)
Amy M. Smith (0081712)
Assistant United States Attorneys
200 West Second Street, Suite 600
Dayton, Ohio 45402
(937) 225-2910
Fax: (937) 225-256

1

**INTRODUCTION**

Defendant Jose Antonio Alvarenga, a native of El Salvador—who has previously been removed from the United States in August 2012—has been indicted for one count of unlawful reentry, in violation of 18 U.S.C. §1326(a).  Defendant now moves to dismiss his indictment pursuant to 18 U.S.C. § 1326(d), arguing that this removal was procedurally unsound.  In launching this collateral attack, Defendant does not dispute that he was in the country without authorization at the time of his prior removal in 2012.  Nor does he contest the merits of the removal order.  Rather, Defendant claims that he did not receive proper notice of the removal proceedings that led to entry of the removal order *in absentia* and that, if he had attended those proceedings, the immigration judge may, in an exercise of discretion, have given him the opportunity to depart the country voluntarily (instead of ordering him removed).  This collateral attack fails because Defendant has not carried his burden of showing that (1) he has exhausted his administrative remedies, (2) he was deprived of judicial review of the removal order, and (3) entry of the removal order was fundamentally unfair.  His motion should be denied.

**BACKGROUND**

**A.  Immigration Proceedings**

On March 27, 2012, Defendant was arrested when the Pittsburgh, PA Fugitive Operations team conducted an operation at 148 Hammond Road in Mars, PA.  Although he was not the target of the operation, Defendant, a native of El Salvador, was arrested and taken to the Department of Homeland Security (DHS) Office in Pittsburgh.  (*See* Doc. 13-1, Def.'s Ex. A (Record of Deportable/Inadmissible Alien), PAGEID 27; Doc. 18-1, Def.'s Ex. F, PageID 87.)

2

On or about the date of his arrest, Defendant was served in person with a Notice to Appear ("NTA") for his removal proceedings. (Doc. 13-1, Def.'s Ex. B.) The NTA included Defendant's name as the respondent and listed his address as 148 Hammond Road, Mars, Pennsylvania; the same address where he was arrested. (*Id.*) Also, the NTA addressed that the time and date of his removal proceedings would be set later and that the hearing would occur before an immigration judge at a specified address where the hearing would occur. (*Id.*) Included on Defendant's NTA was a paragraph, entitled "Failure to Appear." (*Id.* at PAGEID 30.) This paragraph stated that Defendant was required to provide DHS with his full mailing address and telephone number. (*Id.*) The NTA also stated that Defendant must provide notice to the Immigration Court whenever his address or telephone number changed by using a Form EOIR-33. (*Id.*) Further, the NTA stated that if Defendant did not attend his hearing the immigration judge may make a removal order in his absence. (*Id.*) As detailed on the NTA, an interpreter provided him with oral notice in Spanish (his native language) "of the time and place of his . . . hearing and of the consequences of failure to appear . . . ." (*Id.*) Defendant affirmed and acknowledged that he understood the requirements of the NTA and the consequences of failing to appear by signing the NTA on March 27, 2012. (*Id.*)

Subsequent to Defendant signing the NTA with which he was personally served, on March 28, 2012, Defendant was issued a $4,000 delivery bond that was paid by his employer; the bond listed Defendant's address as 148 Hammond Rd. (*See* Doc. 13-1, Def.'s Ex. C).

On or about April 12, 2012, DHS sent via mail a Notice of Hearing ("NOH") detailing his May 9, 2012 hearing date at 1:00PM. (Doc. 18-1, Def.'s Ex. F, PAGEID 89-90.) The NOH was sent to the Hammond Rd. address, the only address the Immigration Court had on file for Defendant. (*Id.* at PAGEID 89-94.) However, it was returned as undeliverable. *(Id.* at PAGEID

3

89.)  Notably, Defendant never provided an updated address to the immigration court.  On May 9, 2012, Defendant's removal proceeding occurred, and he failed to appear.  Consistent with federal immigration law, Defendant, the Immigration Judge ordered Defendant removed *in absentia* to El Salvador. (*See* Doc. 13-1, Def.'s Ex. D (Removal Order)

Subsequent to Defendant being ordered removed *in absentia*, an I-340 was sent to Defendant's employer, who had previously posted his bond, instructing the employer to present Defendant to DHS in Pittsburgh, Pennsylvania by May 31, 2012.  (*See* Doc. 13-1, Def.'s Ex. A (Record of Deportable/Inadmissible Alien), PAGEID 28.)  Defendant's employer had his brother present Defendant to the ERO Office as instructed. (*See id.*).  Defendant was processed and detained in ICE custody.  While in ICE custody in York, PA, Defendant was provided a Form I-294, "Warning to Alien Ordered Removed or Deported," which advised him that an immigration judge had ordered him removed.  (*See* Doc. 13-1, Def.'s Ex. E, PAGEID 39).  He was deported on August 10, 2012.  (*See id.* at PAGEID 38.)

## ARGUMENT

Generally speaking, a defendant may not challenge "the validity of the deportation order" on which an unlawful-reentry charge is based unless the defendant demonstrates three things:

> 1. the defendant "exhausted any administrative remedies that may have been available to seek relief against that order;" 2. "the deportation proceedings at which the order was issued improperly deprived the [defendant] of the opportunity for judicial review;" and 3. "the entry of the order was fundamentally unfair."

18 U.S.C. § 1326(d)(1)-(3)*.*  As the statutory language makes plain, the burden lies with Defendant to establish each of the predicates.  *See United States* v. *Silveste-Gregorio*, 2019 WL 2353215, at *9 (E.D. Tenn. June 3, 2019) ("[T]he burden of meeting § 1326(d)'s elements unquestionably rests

with the movant").  Failure to demonstrate any one of the three statutory predicates serves as an independent bar to relief.  *See United States* v. *Palomar-Santiago*, 593 U.S. 321, 329 (2021) ("The Court holds that each of the statutory requirements of § 1326(d) is mandatory.").

Here, Defendant moves to dismiss the indictment pursuant to § 1326(d) on the ground that he did not receive adequate notice of his removal proceedings and therefore did not have a chance to request permission to depart the country voluntarily.  (*See* Doc. 18, Def.'s Supp. Motion, PAGEID 77-80). But Defendant essentially admits (as he must) that he has failed to exhaust his remedies before the immigration authorities, which, on its own, defeats his motion. Moreover, over the last thirteen years, Defendant could have sought judicial review of his removal order by litigating a motion to reopen that ultimately would have made its way to a federal court of appeals. Separately, Defendant cannot show that entry of the removal order was fundamentally unfair, which furnishes another ground for denying the requested relief.  As a result, Defendant's motion to dismiss the indictment should be denied.[1]

### A.  Defendant Has Failed to Exhaust Administrative Remedies.

As set forth above, the initial requirement of § 1326(d) is that a defendant exhaust his opportunities for administrative relief through the relevant immigration authorities.  Put

---

[1] Defendant also asserts – relying on outdated, non-binding decisions from courts in the Eastern District of Washington – that the removal order is "void ab initio" because the issuing immigration judge lacked jurisdiction based on the fact that the initial notice to appear did not contain the date and time of the removal hearing.  (*See* Doc. 13, Def.'s Mot. at PAGEID 21.)  This argument fails for multiple reasons.  *First*, the Sixth Circuit has unambiguously held that, under the applicable regulation, a notice to appear need not contain "references to the time and place of the hearing" in order to "vest [an immigration judge with] jurisdiction."  *See Santos-Santos* v. *Burr*, 917 F.3d 486, 490 (6th Cir. 2019).  *Second*, even if notice of date and time were a jurisdictional prerequisite (and they were not), that information was contained subsequently provided the notice of hearing (*see* Doc. 18-1, Def.'s Ex. F at PAGEID 87), which is sufficient under Supreme Court precedent. *See Campos-Chaves* v. *Garland*, 602 U.S. 447, 450 (2024).

5

somewhat differently, before launching a collateral attack under § 1326(d)(1), a defendant must first seek, and be denied, relief through available administrative channels, giving immigration authorities the first opportunity to "fix" any purported errors in the removal proceedings. *See Palomar-Santiago*, 593 U.S. at 328; *see also United States* v. *Castillo-Martinez*, 16 F.4th 906, 915 (1st Cir. 2021) ("This exhaustion requirement is consistent with the congressional intent underlying § 1326(d) to defer to agency determinations and restrict collateral attacks on those agency determinations."). Defendant has not yet reached the exhaustion threshold in this matter, necessitating denial of his dismissal motion.

Pursuant to 18 U.S.C. § 1229a(b)(5)(C)(ii), an alien may move *at any time* to reopen his removal proceedings on the ground that he did not receive notice as statutorily prescribed. *See Paz-Martinez* v. *Barr*, 828 F. App'x 302, 305 (6th Cir. 2020) ("If the alien demonstrates that she did not receive an NTA [*i.e.*, notice to appear] or notice of hearing consistent with the statutory requirements, there is no time limit for filing a motion to reopen and rescind."); *see also Campos* v. *Atty. Gen. of U.S.*, 755 F. App'x 90, 93 (3d Cir. 2018) ("An *in absentia* removal order may be rescinded upon a motion to reopen "filed at any time if the alien demonstrates that the alien did not receive notice.").[2] Given Defendant's claim that he failed to receive proper advance notice of his removal proceedings, a motion to reopen before immigration authorities has long presented him with an obvious avenue for pursuing relief from his removal order. *See United States* v. *Hernanez-Perdomo*, 948 F.3d 807, 811 (7th Cir. 2020) ("We have held that a motion to reopen is an 'available' administrative remedy for purposes of § 1326(d)(1).")

---

[2] Because Defendant's removal proceedings occurred (and are still occurring) in Pennsylvania, the Government has also cited to Third Circuit case law concerning availability of remedies pursuant to § 1229a(b)(5)(C)(ii).

Yet at no time prior to the commencement of this criminal case has Defendant sought to reopen his removal proceedings before an immigration judge. And, although he is now in the process of doing so, Defendant has not asserted that they have fully run their course. In other words, while he may have *initiated* a motion to reopen, he has not *exhausted* his remedy.[3] Accordingly, the first prong of § 1326(d) has not been satisfied.

Contrary to Defendant's assertions (*see* Doc. 18. Def.'s Supp. Mot., PAGEID 78-79), the exhaustion requirement is not somehow excused based on his purported lack of notice of the removal proceedings. Indeed, the Sixth Circuit has expressly rejected this argument. *See United States* v. *Flores-Perez*, 1 F.4th 454 (6th Cir. 2021). In *Flores-Perez*, the defendant – having been charged with unlawful reentry – attempted to attack his removal order collaterally, asserting that he had not received notice of his removal proceedings and that the removal order had been improperly entered *in absentia*. *See id.* at 455-58. Essentially conceding that he had "not pursued administrative remedies," the defendant sought "to excuse his failure to comply with § 1326(d) on the purported basis that he only had to exhaust the remedies that were 'available' to him and that the flawed notice 'severely limited' the available remedies." *See id.* at 457-58. The Sixth Circuit was unpersuaded, noting that "the relevant statutory scheme expressly contemplates how a noncitizen can proceed in the event of insufficient notice." *See id.* at 458. In the end, the Sixth Circuit concluded that the defendant's § 1326(d) motion should be denied.

---

[3] To the extent that Defendant is implying that the strategic initiation of parallel proceedings before an immigration judge during the pendency of his criminal case is somehow sufficient to satisfy the exhaustion requirement, that position "is incompatible with the text of § 1326(d)." *Palomar-Santiago*, 593 U.S. at 326; *see also id.* ("When Congress uses 'mandatory language' in an administrative exhaustion provision, 'a court may not excuse a failure to exhaust.'"). Exhaustion means exhaustion, not quasi-exhaustion.

The present case is materially indistinguishable from *Flores-Perez*.  Like the defendant in that case, Defendant claims that he did not receive advance notice of his removal proceedings as required by statute, but he was certainly aware of his removal order by no later than July 30, 2012, when he was presented with a "Warning to Alien Ordered Removed or Deported" that advised him he had been found "inadmissible under section 212 of the [Immigration and Nationality] Act" and "ordered removed from the United States by an immigration judge in proceedings under section 240 of the Act."  (*See* Doc. 13-1, Def.'s Ex. E, PAGEID 39.)  Notwithstanding his removal from (and subsequent unauthorized return to) the country, Defendant neglected for over 13 years to avail himself of the opportunity to reopen his removal proceedings administratively through a motion pursuant to 18 U.S.C. § 1229a(b)(5)(C)(ii), a mechanism which he was fully capable of uncovering through minimal research or through consultation with an immigration attorney.  *See United States* v. *Flores-Perez*, 2019 WL 2929187, at *5 (E.D. Mich. July 8, 2019) ("[I]ndividuals subject to removal proceedings 'are presumed capable of researching generally available remedies' to challenge a removal decision." (quoting *United States* v. *Alegria-Saldana*, 750 F.3d 638, 641 (7th Cir. 2014))).[4]

In sum, more than a decade after his removal, Defendant has finally begun his attempt to unwind his removal order administratively.  But he cannot – at the outset of that process – be heard to claim that his administrative remedies have been exhausted.  His motion must be denied.[5]

---

[4] Moreover, as discussed in greater detail below, the evidentiary record plainly demonstrates that Defendant was personally served with a notice to appear – which he signed – advising him of the proceedings against him and the need to provide immigration authorities with up-to-date address information, undercutting any assertion that anyone other than Defendant himself was to blame for any notice failures in this case.

[5] The Government understands that the Department of Homeland Security, in responding to Defendant's motion to reopen, has taken the position that reopening is improper under 8 U.S.C. § 1231(a)(5).  That section provides that, if "an alien has reentered the United States illegally after

### B. Defendant Cannot Show That Judicial Review Was Unavailable.

For similar reasons, Defendant cannot establish that entry of his removal order improperly denied him the ability to seek judicial review of the immigration judge's decision. Although he may have been cut off from pursuing a direct appeal of the removal order as a result of his failure to appear at the initial administrative removal proceedings, Defendant was nonetheless empowered to file a motion to reopen the removal order on the grounds that he received inadequate statutory notice. *See* 18 U.S.C. § 1229a(b)(5)(C)(ii); *Paz-Martinez*, 828 F. App'x at 305; *Campos*, 755 F. App'x at 93. Had he done so, his motion to reopen would have made its way from an immigration judge to the Board of Immigration Appeals ("BIA") and ultimately to a Court of Appeals for review by a panel of federal appellate judges. *See, e.g.*, *Valadez-Lara*, 963 F. 3d at 564 (reviewing BIA's denial of motion to reopen under § 1229a(b)(5)(C)(ii) and concluding that "Board did not abuse its discretion in holding that [the petitioner's] motion to reopen failed to demonstrate that he

_____

having been removed . . . , the prior order of removal is reinstated from its original date and is not subject to being reopened." 8 U.S.C. § 1231(a)(5). The Third and Sixth Circuits have yet to decide whether the broad prohibition on reopening set forth in § 1231(a)(5) overrides the specific conferral under § 1229a(b)(5)(C)(ii) of the ability to move for reopening based on lack of notice – at any time – of a removal order entered *in absentia*. *See Valadez-Lara* v. *Barr*, 963 F.3d 560, 564 (6th Cir. 2020) (declining to "consider . . . statutory issue" of whether alien seeking reopening pursuant to § 1229a(b)(5)(C)(ii) was "categorically barred from seeking relief under 8 U.S.C. § 1231(a)(5)"). The other circuit courts to address the issue have held or suggested that § 1231(a)(5) does not preclude an alien from filing a reopening motion based on lack of notice where the removal order was entered *in absentia*. *See Meija* v. *Whitaker*, 913 F.3d 482, 487-88 (5th Cir. 2019) (concluding that § 1231(a)(5) did not deprive court of jurisdiction to evaluate denial of motion to reopen under § 1229a(b)(5)(C)(ii)); *Miller* v. *Sessions*, 889 F.3d 998, 1001-03 (9th Cir. 2018) (concluding that "§ 1231(a)(5) [does not] bar[] immigration judges from entertaining a motion to reopen under § 1229a(b)(5)(C)(ii)"). Thus, the language of § 1231(a)(5) cannot yet be said to trigger an automatic exhaustion of remedies for purposes of 18 U.S.C. § 1326(d)(1) in the case of an illegal reentrant, a reality that Defendant has tacitly acknowledged by pursuing a motion to reopen in the first place. Ultimately, the question may be settled in Defendant's case by the Third Circuit Court of Appeals. Until such time, Defendant's claims cannot be said to be administratively exhausted as a matter of law.

lacked notice"). Accordingly, Defendant has not shown that entry of the removal order in 2012 deprived him of meaningful judicial review, and his dismissal motion fails under the second prong of the § 1326(d) analysis. *See United States* v. *Lopez-Segura*, 2022 WL 4099295, at *3 (W.D. Okla. Sept. 7, 2022) (defendant not improperly "denied judicial review" where he could have "'moved to reopen his removal case, appealed to the BIA, and eventually gained review by an Article III court'").

Relying on *United States* v. *El Shami*, 434 F.3d 659 (4th Cir. 2005), Defendant attempts to slip past the unavailability-of-judicial-review prong, pointing, again, to his purported lack of notice of the removal proceedings. This argument is unavailing. As an initial matter, *El Shami* is readily distinguishable based on its highly unique facts: in that case, the Government conceded that the defendant's A-File contained literally "no evidence" that he had been provided with written notice of his removal proceedings, *see El Shami*, 434 F.3d at 664, whereas, in the present case, Defendant was personally served with an initial notice to appear, which he signed (*see* Doc. 13-1, Def.'s Ex. B). Additionally, in considering the questions of exhaustion of remedies and availability of judicial review, the *El Shami* Court focused solely on the availability of a direct appeal of the removal order and was never even asked to consider the impact of a motion to reopen under § 1229a(b)(5)(C)(ii). *See El Shami*, 434 F.3d at 664 (noting that United States argued for lack of exhaustion on grounds that defendant "never appealed the immigration judge's order"). As the Sixth Circuit's subsequent decision in *Flores-Perez* makes plain, a motion to reopen furnishes an alternative remedial pathway, which could have resulted in judicial review of the propriety of the removal order. *See also Flores-Perez*, 2019 WL 2929187, at *6 (distinguishing *El Shami* and noting that "Sixth Circuit precedent stands in the way of adopting [*El Shami*'s] reasoning").

Following his removal, Defendant could have moved to reopen the order that led to his departure, which ultimately would have provided him with an avenue for judicial relief. His failure to do so independently forecloses his collateral attack on that order in this criminal prosecution. *See Hernandez-Perdomo*, 948 F.3d at 812 ("Likewise, if [defendants] had filed motions to reopen, they could have obtained judicial review of the denial of those motions or of the final removal orders entered after a proper hearing. They were thus not 'improperly deprived' of judicial review, 8 U.S.C. § 1326(d)(2), they just never sought it.").

## C. Defendant Cannot Demonstrate That Entry of His Prior Removal Order was Fundamentally Unfair.

To demonstrate that his removal order was entered in a manner antithetical to fundamental notions of fairness, a defendant must show: (1) "a due process violation emanating from defects in the underlying deportation proceeding;" and (2) "resulting prejudice." *United States v. Estrada*, 876 F.3d 885, 887 (6th Cir. 2017). Because Defendant has shown neither, his dismissal motion must be denied for failure to satisfy § 1326(d)(3).

### 1. Defendant Has Not Established a Due Process Violation Based on Lack of Notice of His Removal Hearing.

Defendant claims that, because he did not affirmatively receive notice of the date and time of his removal proceedings, he was deprived of due process when the immigration judge ordered him removed *in absentia* in April 2012. (*See, e.g.*, Doc. 18, Def.'s Suppl. Mot., PAGEID 80-81.) This argument fails.

Generally speaking, immigration authorities must provide an alien with written notice of removal proceedings, including the date, time, and place of the hearing. *See generally* 18 U.S.C. § 1229(a); *see also Campos-Chaves* v. *Garland*, 602 U.S. 447, 450 (2024) ("When the

11

Government seeks to remove an alien, it is required to notify the alien of the time and place of the removal hearings.").

As the Supreme Court recently explained, under the relevant statutory provisions, "[t]hat 'written notice' can take two forms." *Campos-Chaves*, 602 U.S. at 451. *First*, under § 1229(a)(1), immigration authorities can provide a written notice to appear ("NTA") setting out, *inter alia*, the nature of the proceedings, the time and place at which they will be held, and the consequences of failing to appear. *See* 18 U.S.C. § 1229(a)(1). *Second*, pursuant to § 1229(a)(2), where there is a change or delay in the time or place of the hearing, the written notice must contain the new time and place and indicate the consequences of non-appearance. *See id.* § 1229(a)(1). The Supreme Court has recently read the operative provisions to sanction an approach in which the initial NTA leaves the date and time of the hearing "TBD" (or "to be determined") and a second written notice is sent to the alien to specify when the hearing will take place. *See Campos-Chaves*, 602 U.S. at 461-62; *see also Dababneh* v. *Gonzales*, 471 F.3d 806, 809 (7th Cir. 2006) ("DHS frequently serves NTAs where there is no immediate access to docketing information. In those circumstances, DHS may indicate in the NTA that it will give the alien subsequent notice of the precise time and place of the hearing once it files the NTA with the appropriate immigration court.").[6]

---

[6] Notably, the Sixth Circuit has held that neither the statute nor due process concerns require that the NTA be in an alien's native language. *See, e.g.*, *Lopez* v. *Garland*, 990 F.3d 1000, 1003 (6th Cir. 2021) ("[A]s we have previously recognized, notice 'in English to a non-English-speaker typically satisfies due process because it puts the alien on notice that further inquiry is needed, leaving the alien to seek help from someone who can overcome the language barrier.'"); *Saldano-Navarro* v. *Whitaker*, 759 F. App'x 427, 429 (6th Cir. 2018) ("[W]e have previously recognized that the Immigration and Nationality Act (INA) . . . does not required that the NTA be explained or written in an alien's native language."). Thus, inasmuch as Defendant intimates that the written notice in his case was deficient based on the language in which was provided, he is mistaken.

Regarding the method of delivery, the statutory provisions indicate that, where practicable, notice "shall be given in person to the alien." *See* 18 U.S.C. § 1229(a)(1), (2). In the event that in-person service "is not practical," the written notice shall be delivered "through service by mail." *See id.*; *see also Valadez-Lara*, 963 F.3d at 566 ("If personal service is not practicable, by contrast, authorities may alternatively send the notice in the mail."). When effectuated through the mail, service "shall be sufficient if there is proof of attempted delivery to the last address provided by the alien . . . ." 18 U.S.C. § 1229(c).

As the preceding statutory provision indicates, in order to allow for the conferral of written notice by mail, an alien is obligated to notify immigration authorities of his mailing address and to keep that address information updated. *See* 18 U.S.C. § 1229(a)(1)(F)(i), (ii); *see also Valadez-Lara*, 963 F.3d at 566 ("Section 1229(a)(1)(F), in turn, makes clear that immigrants must provide authorities with their address for receiving information.").

In addition to the statutory requirements, the Due Process Clause of the U.S. Constitution – which "applies to all 'persons' within the United States, including aliens without lawful status" – imposes notice requirements in the context of removal proceedings. *See Mota-Roman* v. *Holder*, 331 F. App'x 379, 383 (6th Cir. 2009) (citing *Zadvydas* v. *Davis*, 533 U.S. 678, 693 (2001)). "Due process requires notice that is reasonably calculated, under the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Scorteanu* v. *INS*, 339 F.3d 407, 413 (6th Cir. 2003). Accordingly, personal service of written notice of removal proceedings "satisfies due process." *See Morales-Gonzales* v. *Sessions*, 742 F. App'x 120, 122 (6th Cir. 2018). Additionally, "notice of hearing sent by first-class mail to the last known address [of an alien] has been held to satisfy due process even if the notice is returned as undeliverable." *See Al-Rawahneh* v. *INS,* 38 F. App'x 271, 276 (6th Cir. 2002); *see also Mota-*

13

*Roman*, 331 F. App'x at 383 ("In immigration proceedings, '[n]otice of an exclusion hearing sent by regular mail to the last address provided by the alien satisfies the requirements of constitutional due process."). In other words, as a practical matter, the due process notice requirements are satisfied through compliance with the requirements of § 1229(a), and actual notice is not a prerequisite of compliance with the dictates of the Due Process Clause.[7]

Assuming that notice has been furnished to an alien in a manner consistent with § 1229(a), if the alien fails to appear for a removal hearing, the immigration judge may enter a removal order *in absentia*. *See* 8 U.S.C. § 1229a(b)(5)(A). Similarly, a hearing may be conducted *in absentia* without proof of actual written notice if "the alien has failed to provide the address required under [8 U.S.C. § 1229(a)(1)(F)]." *See id.* § 1229a(b)(5)(B); *see also James* v. *Sessions*, 709 F. App'x 810, 813 (6th Cir. 2017) ("Written notice of the hearing is not required if the alien has failed to provide the address at which the alien may be contacted.").

In the present case, the removal proceedings – and the provision of notice to Defendant – comported with the requirements of both § 1229(a) and due process. Defendant was arrested at 148 Hammond Road in Mars, Pennsylvania on March 27, 2012. (*See* Doc. 13-1, Def.'s Ex. A (Record of Deportable/Inadmissible Alien), PAGEID 27-28; Doc. 18-2, Def.'s Ex. F (Record of Deportable/Inadmissible Alien), PAGEID 86-87.) As documented in his A-File, at the time of his arrest, Defendant was personally "served with a Notice to Appear," which he signed and stamped with his fingerprint. (*See* Def.'s Ex. A at PAGEID 27; *see also* Doc. 13-1, Def.'s Ex. B (Notice

---

[7] Defendant's suggestion that due process always demands actual notice of removal proceedings is – in addition to being unworkable from a practical standpoint – wrong. *See Al-Rawahneh*, 38 F. App'x at 275 (expressly noting that "[d]ue process does not require actual notice").

to Appear), PAGEID 29-30.) [8] The NTA – portions of which were orally explained to Defendant in Spanish – listed Defendant's address as being that of the home at which he was arrested (*i.e.*, 148 Hammond Road). (*See* Def.'s Ex. B at PAGEID 29.) The NTA alleged that Defendant was a native of El Salvador present in the United States without authorization and ordered Defendant to appear for a removal hearing before an immigration judge at a specific place (3400 Concord Road, Suite 2, York, Pennsylvania) on "a date to be set" at "a time to be set." (*See id.*) Further, the NTA expressly advised Defendant that he was "required to provide the DHS, in writing, with [his] full mailing address" and that he "must notify the Immigration Court immediately" if he "change[d] [his] address . . . during the course of this proceeding." (*See id.* at PAGEID 30.) The NTA stated that Defendant would be provided with "a copy of this form" and that "[n]otices of hearing" would be "mailed to this address." (*See id.*) Apprising Defendant of the potential consequences of certain acts or omissions, the NTA noted that, if he did not furnish an address at which he "may be reached during proceedings," then "the Government [would] not be required to provide [him] with written notice of hearing." (*See id.*) In addition, the NTA advised Defendant that, if he "failed to attend the hearing . . . at any date and time later directed by the Immigration Court," then "a removal order may be made by the immigration judge in your absence." (*See id.*)

---

[8] In a conclusory affidavit thin on specifics, Defendant concedes that, at the time of his arrest, he was provided with papers. (*See* Doc. 18-2, Def.'s Aff., PAGEID 95.) According to Defendant, he did not speak English, and nobody explained the papers. (*See id.*) But the Notice to Appear – the authenticity of which Defendant does not dispute – contains a handwritten annotation indicating that a translator provided oral notice to Defendant of the "time and place of his . . . hearing" and the "consequences of failure to appear." (*See* Def.'s Ex. B at PAGEID 30.) And, as he admits in so many words, Defendant signed the Notice to Appear. (*See* Def.'s Aff at PAGEID 95 (asserting that "no one explained to me what the papers said or what I was signing").) The weight of the evidence therefore cuts in favor of a finding that Defendant was provided with a copy of the form, which was then verbally explained to him in relevant part in Spanish. In any event, as indicated above, the Sixth Circuit has held that due process is satisfied when written notice is provided in English, as an alien is then placed in a position where further inquiry is warranted (and expected). *See, e.g.*, *Lopez*, 990 F.3d at 1003.

Subsequently, on April 12, 2021, a notice of hearing ("NOH") was mailed to Defendant at the 148 Hammond Road address specified in the NTA.  (*See* Doc. 18-1, Def.'s Ex. F, PAGEID 89-90.)  Although he claims to have been "living in temporary housing provided by [his] employer" that "changed depending on our worksite," Defendant never updated his address information for purposes of receiving the NOH.  (*See* Doc. 18-2, Def.'s Aff., PAGEID 95.)  The NOH specified that Defendant's case had been scheduled for a Master Hearing on "May 9, 2012 at 1:00 P.M." at 3000 Sidney Street, 1st Floor, Mars, Pennsylvania.  (*See* Doc. 18-1, Def.'s Ex. F, PAGEID 90.)  In addition, the NOH contained an express disclosure regarding the consequences of non-appearance at the hearing, including that the hearing could be "held in [Defendant's] absence."  (*See id.*)  Although sent to the address in the NTA (which, again, Defendant never disputed, rectified, or updated), the NOH was returned as undeliverable.  (*See id.* at PAGEID 89.)

Ultimately, on May 9, 2012, the removal hearing went forward, and Defendant failed to appear.  The immigration judge ordered him removed *in absentia*, noting that Defendant had been served with the NTA and provided with written notification of the time, date, and location of the hearing; that Defendant had not shown; and that the Department of Homeland Security had submitted evidence of Defendant's Removability.  (*See* Doc. 18-1, Def.'s Ex. F, PAGEID 85.)

In following this procedure, immigration authorities sent notice in a manner compliant with 8. U.S.C. § 1229(a)(2), personally serving Defendant with the NTA and subsequently advising him as to the date, time, and location of the removal hearing (and the consequences of failing to attend) by mailing an NOH to the address listed in the NTA.  *See Campos-Chaves*, 602 U.S. at 461.  And, because Defendant failed to comply with his obligation to provide immigration authorities with updated address information pursuant to § 1229(a)(1)(F), the removal hearing was

permitted to take place without Defendant receiving actual written notice. *See* 8 U.S.C. § 1229a(b)(5)(B).

This statutorily compliant chain of events was more than adequate to afford Defendant his required due process protections, as is evident from the Sixth Circuit's decision in *Mota-Roman*. In that case, the petitioner, a native of Mexico, sought to reopen his removal hearing after having been ordered removed *in absentia* on the grounds that he received insufficient notice for purposes of due process. *See* 331 F. App'x at 380. Prior to the initial removal proceedings, the petitioner was personally served with a notice to appear, which advised him that a removal hearing would take place and "warned [him] that failure to keep his address current could result in removal *in absentia*." *See id.* The immigration court later mailed a hearing notice to petitioner "at the address listed on his NTA" that indicated where and when the hearing would occur. *See id.* Even though the notice of hearing was ultimately "returned to the Immigration Court as undeliverable," the Sixth Circuit found "no due process violation here." *See id.* at 380, 383. In so holding, the Court found that immigration authorities, in mailing notice of the time and place of the hearing to the address in the NTA, had complied with the statutory requirements and had used a method of service that "was reasonably calculated to ensure that [the petitioner] received notice of his hearing, thereby satisfying the requirements of due process." *See id.* at 383. The Sixth Circuit went on to reject expressly the argument that Defendant was entitled to actual notice under the circumstances, observing that the petitioner "never made any attempt to apprise the Immigration Court of his whereabouts so that notice could be received. *See id.* at 384.

The same is true in this case. Immigration authorities endeavored to notify Defendant of his hearing through statutorily prescribed methods, but Defendant failed to do his part, declining to disclose that he was in temporary housing and that he would be moving. Due process is not

17

offended where the notice failure lies at Defendant's feet. *See also James*, 709 F. App'x at 814 (finding "no due process violation" based on lack of notice where, *inter alia*, defendant "neither provided her current address to the DHS or the Immigration Court nor gave notice that the address listed on the NTA was incorrect"). [9]

### 2. In Any Event, Defendant Cannot Show Prejudice Stemming From His Failure To Attend His Removal Proceedings.

Even if there were some deficiency in the notice procedures utilized to advise Defendant of his removal proceedings (and there was not), Defendant's motion should nonetheless be denied for want of prejudice. In claiming that he was prejudiced by a purported lack of notice, Defendant points principally to the fact that, had he attended his removal proceedings, he may have been granted the discretionary privilege of being permitted to leave the United States on a voluntary basis. (*See* Doc. 18, Def.'s Suppl. Mot. PAGEID 80.) But Defendant's speculation that he may have been afforded voluntary departure falls short of showing prejudice.

Voluntary departure is a discretionary form of relief that an immigration judge may choose to confer on an alien facing removal (provided certain criteria are met). As suggested by the term's plain meaning, "voluntary departure allows certain aliens 'to leave the country willingly' and avoid the legal consequences of a removal order." *See United States v. Silvestre-Gregorio*, 2019 WL 2353215, at *15 (E.D. Tenn. June 3, 2019) (citation omitted). Importantly,

---

[9] As addressed more fully below, Defendant's asserted due process injury is that, by virtue of the lack of notice of the removal hearing, he was unable to pursue voluntary departure. But the Sixth Circuit has definitively and repeatedly found that there is no due process right to "discretionary relief from deportation." *See United States* v. *Silvestre-Gregorio*, 983 F.3d 848, 857-58 (6th Cir. 2020). Thus, for this separate reason, Defendant has failed to make out a due process violation. *See Estrada*, 876 F.3d at ("Without a cognizable liberty or property interest at stake, a due process violation cannot occur." (internal quotation marks omitted)).

even if an alien meets the eligibility criteria, a grant voluntary departure is "an act of grace," meaning that it lies within the discretion of the immigration judge to bestow this non-compulsory form of relief. *See United States v. Barba*, 2009 WL 1586793, at *10 (E.D. Tenn. June 3, 2009).

While some Courts of Appeals have concluded that a defendant can demonstrate prejudice in the context of § 1326(d)(3) by showing a reasonable likelihood that he would have been granted voluntary departure, *see, e.g., United States v. Fernandez Sanchez*, 46 F.4th 211 (4th Cir. 2022), at least one other has flatly refused to entertain claims of fundamental unfairness predicated on the alleged deprivation of discretionary forms of relief from removal, *see, e.g., United States* v. *Arita-Campos*, 607 F.3d 487, 493 (7th Cir. 2010) (defendant failed to demonstrate prejudice pursuant to § 1326(d)(3) based on lack of voluntary departure).

The Sixth Circuit has yet to consider the question whether the denial of an opportunity for voluntary departure can suffice to show prejudice for purposes of § 1326(d)(3). But the Sixth Circuit has – on myriad occasions – held that an alien "'has no constitutionally-protected liberty interest in obtaining discretionary relief from deportation.'" *Estrada*, 876 F.3d at 887 (quoting *Ashki v. INS*, 233 F.3d 913, 921 (6th Cir. 2000)); *see also Dia v. Mukasey*, 292 F. App'x 468, 472 (6th Cir. 2008) (no due process interest in receiving voluntary departure). In reaching this conclusion, the Sixth Circuit has stressed that "[t]he privilege of voluntary departure is a matter of administrative discretion; therefore, it is not a property or liberty interest." *Shtyllaku v. Gonzales*, 252 F. App'x 16, 20 (6th Cir. 2007).

Recently, in *Silvestre-Gregorio*, the Sixth Circuit reaffirmed this principle in the context of a § 1326(d) motion. In that case, the defendant sought to demonstrate that his removal order was fundamentally unfair under § 1326(d)(3) because "the immigration judge violated his due-process rights . . . by failing to notify him that he had the ability to seek voluntary departure."

19

*See* 983 F.3d at 857. In rejecting this contention, the Sixth Circuit noted, *inter alia*, that discretionary relief from removal does not give rise to a cognizable liberty interest for purposes of the due process analysis. *See id.* at 857-58; *see also Estrada*, 876 F.3d at 889 (finding "no fundamental unfairness" under § 1326(d)(3) based on counsel's alleged failure to advise client of eligibility for discretionary relief from deportation).

Although not expressly couched in terms of prejudice, this well established Sixth Circuit precedent forecloses Defendant from asserting any harm arising from a lack of access to voluntary departure. That remedy is fully discretionary, and any asserted entitlement to the privilege of self-directed exclusion is thus inherently speculative. In other words, the absence of a cognizable interest necessarily entails the absence of a cognizable injury. *See Flores-Perez*, 2019 WL 2929187, at *7 ("[E]ven if the defendant has established that the removal was procedurally defective, he has not satisfied the second requirement of the fundamental unfairness inquiry, because he has not shown that he was prejudiced by the lack of notice, since he had no due process-protected interest in receiving the discretionary relief of voluntary departure.").

In the end, Defendant's inability to show prejudice (or a due process violation) means he cannot demonstrate that his removal order was fundamentally unfair, necessitating denial of his motion for failure to satisfy § 1326(d)(3).

**CONCLUSION**

This Court should deny Defendant's motion to dismiss. There is a statutory framework under 8 U.S.C. §1326(d) in which to collaterally attack one's removal order in which Defendant has failed three over to meet his burden of proof. Therefore, the Government is asking this Court to deny Defendant's motion to dismiss.

Respectfully submitted,

DOMINICK S. GERACE II.
UNITED STATES ATTORNEY

*/s/ Erica D. Lunderman*
Erica D. Lunderman (0098342)
Amy M. Smith (0081712)
Assistant United States Attorney
200 West Second Street, Suite 600
Dayton, Ohio 45402
(937) 225-2910
Fax: (937) 225-2564
Erica.Lunderman@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing Government's Motion was served via ECF to

Counsel for Defendant.

*/s/ Erica D. Lunderman*
Erica D. Lunderman (0098342)
Assistant United States Attorney

21